THE STATE OF KANSAS, *on the relation of S. S. Ashbaugh, County Attorney,* v. JOHN J. STEVENS, *as County Clerk of Kingman County.*

MANDAMUS—*Violation of Writ—Power of Court at Chambers.* The judge of the district court at chambers cannot legally hear and determine a prosecution in the nature of a contempt proceeding for an alleged violation of a peremptory writ of *mandamus.*

*Appeal from Kingman District Court.*

THIS case is an appeal by *John J. Stevens* from an order of the judge of the district court of Kingman county, made at chambers, on March 24, 1888, adjudging the appellant to be guilty of a contempt in violating a peremptory writ of *mandamus,* and that he pay a fine of $10 and the costs of suit, and be committed to the county jail until such fine and costs be paid. The material facts are stated in the opinion.

*F. E. Gillett,* and *Webb, Campbell & Spencer,* for appellant.

*S. S. Ashbaugh,* county attorney, for The State; *James F. Steck,* of counsel.

The opinion of the court was delivered by

VALENTINE, J.: This is an appeal by John J. Stevens to the supreme court from an order of the judge of the district court of Kingman county, made at chambers, adjudging the defendant, John J. Stevens, and others, to be guilty of a contempt in violating a peremptory writ of *mandamus.* The facts of the case are substantially as follows: In 1874 a town or town-site designated as the "town of Kingman" was laid out and platted in Kingman county, which town embraced the northwest quarter of section 5, township 28, range 7, in said county. The plat of such town was duly filed for record on November 28, 1874. Not long thereafter this town was designated by the governor of the state of Kansas as the temporary county seat of Kingman county, and in 1876 it was

8 — 40 KAS.

chosen by the electors of that county to be the permanent county seat, and it became such in fact. This town was principally on the north side of the Ninnescah river. In 1878 another town, or town-site, was laid out and platted adjoining the town of Kingman, but on the south side of the Ninnescah river. This new town was laid out and platted by an incorporated company known as "the Kingman town company." It was located on the west half of the southwest quarter of section 5 and the east half of the southeast quarter of section 6, township 28, range 7, in said county, and was designated as the "south addition to Kingman." The plat thereof was duly filed for record on September 4, 1878. After this, and in 1879 and 1880, the post office for all that part of the country, which was named "Kingman," was located in this "south addition to Kingman," and the people of that vicinity received their mail matter at that place addressed to "Kingman." Also during those years the district court for that county was held in this "south addition to Kingman." The county offices, however, were held in "the town of Kingman," during all that time, and afterward many of the people of Kingman county understood and believed that the general name of "Kingman" embraced and included both these towns, and that they together constituted "Kingman;" while many others understood that the name "Kingman" meant only the old town of Kingman. On November 7, 1881, an election was held in Kingman county to relocate the county seat. Prior to the election, four candidates for such county seat were named, to wit: "Kingman," "Dale City," "Union Hills," and "Cleveland;" but on the day of the election only two places were voted for, to wit, "Kingman" and "Dale City," the first of which places received 377 votes, and "Dale City" received 292 votes. The election therefore resulted in the choice of "Kingman" for the county seat; and it was so declared to be the county seat by the county commissioners of that county. No ballots were cast for either the "town of Kingman" or the "south addition to Kingman." In May, 1883, another town was laid out and platted, adjoining the town of King-

man on the west, and was designated as "Turner's addition to the town of Kingman." After Turner's addition to the town of Kingman was platted, the county commissioners of Kingman county caused a court house and jail and other county buildings to be constructed therein, and the county offices were removed from the town of Kingman; and they, and also the district court, were afterward held in such buildings in Turner's addition, from sometime in December, 1883, up to February 25, 1888. On August 14, 1883, the territory embraced within the "town of Kingman" and the "south addition to Kingman" and "Turner's addition to the town of Kingman," together with some other territory, was incorporated by the district court into and as a city of the third class, under the name of "the city of Kingman." No part of this territory nor the inhabitants thereof had ever before been incorporated. On February 20, 1888, a peremptory writ of *mandamus* was allowed by the judge of the district court at chambers, and was issued by the clerk thereof, commanding the defendant, John J. Stevens, county clerk of Kingman county, and others, the county officers of such county, to remove their offices respectively from Turner's addition to the town of Kingman, to and within the town of Kingman. This allowance and this writ were separate papers. *No allowance was indorsed on the writ.* On February 25, 1888, the defendant, John J. Stevens, made return to this writ that he had obeyed the same by removing his office, together with all the records, books, papers and documents thereof, to the town of Kingman, as commanded. On March 6, 1888, the board of county commissioners designated a certain brick building, situated within the south addition to Kingman, as the place for the county officers of Kingman county to hold their offices, and ordered the defendant and all the other county officers to remove their offices to that place; and the defendant and nearly all the other county officers in obedience to this order of the county commissioners so removed their offices. On March 15, 1888, at the instance of the county attorney, an attachment was issued against the defendant, John J. Stevens,

and the others, requiring them to show cause why they should not be punished as for contempt in disobeying the foregoing peremptory writ of *mandamus*. The defendant Stevens answered, stating among other things, that he had removed his office to his then location in obedience to the said order of the board of county commissioners, and that the place to which he had removed his office, and where he was then holding the same, was in fact within the county seat of Kingman county, and constituted a part thereof, and that he was not guilty of any contempt. On March 16, 1888, the question as to whether the defendant Stevens was guilty of any contempt or not, was tried before the judge of the district court at chambers, and the judge, without making any formal finding, adjudged generally that the defendant was guilty of the contempt charged against him, and that he pay a fine of $10 and costs of suit, and stand committed to the county jail until such fine and costs be paid; to which rulings the defendant excepted, and moved for a new trial and in arrest of judgment, which motions were overruled, and the defendant then appealed to this court.

Three questions are presented in this court by the defendant, John J. Stevens, as follows: (1) It is claimed that the writ of *mandamus* was a nullity, for the reason that there was no allowance of the writ indorsed thereon as required by § 693 of the civil code. (2) It is claimed that the judge of the district court at chambers has no power or authority to hear or determine a proceeding for contempt for violating a writ of *mandamus*, or to punish for any such violation. (3) It is claimed that the evidence in this case shows that the defendant at the time of the supposed contempt was in fact holding his office at and within the county seat, and at a place designated by the board of county commissioners.

I. We think the first question presented by the defendant cannot properly be considered by this court, as the defendant, by recognizing the validity of the writ of *mandamus*, by obeying the same, and by making a return thereto without raising any question below with regard to its regularity or validity,

waived the irregularity of the failure to indorse on the writ the allowance of the same.

II. The second question is more difficult. No judgment or final order can legally be rendered by a judge at chambers, unless specifically authorized by some express provision of law. (*Earls v. Earls*, 27 Kas. 538, 542, 543, and authorities there cited; *Shaffer v. Brinkman*, 31 id. 124; *Packard v. Packard*, 34 id. 53; *Kinports v. Rawson*, 2 S. E. Rep. 85; *Bynum v. Burke County Comm'rs*, 2 id. 170; *Telegraph Co v. Rld. Co.*, 2 South. Rep. 67.) And certainly a judge at chambers cannot, without express authority conferred by law, punish a person for a contempt not committed in his presence. (*The People v. Brennan*, 45 Barb. 344. See also *The State v. McKinnon*, 8 Oreg. 487; *Oates v. McDaniel*, 3 Ala. 356; *Taylor v. Moffatt*, 2 Blackf. 305.) Ordinarily, perhaps, it would be held, if no other statute existed, that § 2, of the act relating to district courts, (Comp. Laws of 1885, ch. 28, p. 312, § 2,) would be broad enough to authorize a judge of the district court at chambers to punish for the violation of a peremptory writ of *mandamus*; but other statutes do exist governing in most cases of *mandamus*, and it may be that these other statutes are conclusive in such cases. Section 699 of the civil code reads as follows:

"Sec. 699. Whenever a peremptory *mandamus* is directed to any public officer, body, or board, commanding the performance of any public duty specially enjoined by law, if it appear to the court that such officer, or any member of such body or board, has, without just excuse, refused or neglected to perform the duty so enjoined, the court may impose a fine, not exceeding five hundred dollars, upon every such officer, or member of such body or board. Such fine, when collected, shall be paid into the treasury of the county where the duty ought to have been performed; and the payment thereof is a bar to an action for any penalty incurred by such officer, or member of such body or board, by reason of his refusal or neglect to perform the duty so enjoined."

The statutes also specifically provide for the punishment of contempts in other cases. Thus for the violation of an injunc-

tion granted by the judge of the district court at chambers, either the court or the judge at chambers may order the punishment. (Civil Code, § 247; *The State v. Cutler*, 13 Kas. 131.) With respect to *quo warranto*, see civil code, § 657; with respect to *habeas corpus*, see civil code, § 675; and with respect to receivers, see civil code, § 260. We might also refer to other statutes, but these are referred to only as illustrations, and for this purpose they are sufficient.

Is not the remedy furnished by § 699 of the civil code exclusive of all other remedies in the nature of contempt proceedings for the violation of a peremptory writ of *mandamus?* The section starts out by saying: "*Whenever* a peremptory *mandamus* is directed to any public officer," etc., "if it appear to the *court* that such officer," etc., has violated the *mandamus,* "the *court* may impose a fine not exceeding five hundred dollars," etc. Do not the words "*whenever* a peremptory *mandamus* is directed,*" etc., mean *at whatever time* a peremptory *mandamus* is directed? Or *in any case where* a peremptory writ of *mandamus* is directed? etc. And if they do mean this, then where is there any room given for the hearing or trial of a prosecution for the violation of a *mandamus* to be had before a judge at chambers? This statute provides for such cases to be heard or tried only before *the court,* and for *the court* only to impose the fine; and provides further, that "the payment thereof is a bar to an action for any penalty incurred" for the violation of a *mandamus.* Now can there be some other kind of prosecution or proceeding instituted, so that the payment of this fine shall not be such a bar? If a case of this kind may be tried under some other statute, then of course such payment might not be a bar. But there can hardly be any room for any prosecution or proceeding similar to this to come under any other statute when the law provides expressly that "*whenever* a peremptory *mandamus* is directed to any public officer," etc., the fine, if any, shall be imposed under this statute. We think that § 699 of the civil code is exclusive of all other remedies in the nature of a prosecution or proceeding for a contempt for the violation of a

Grocery Co. v. Records.

writ of *mandamus*.   We think the judge of the district court erred in trying this case at chambers.

III.  All that we need to say with reference to the third question presented by the defendant, is this: The question whether the "south addition to Kingman" is a part of the county seat of Kingman county, or not, depends upon the further question whether it was generally understood by the people of that county at the time of the county-seat election, held in 1881, that the general name of "Kingman" included such "south addition to Kingman," or not.

The judgment of the judge of the district court at chambers will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.